BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: : <br> : <br> ACCELLION, INC. DATA BREACH : <br> LITIGATION : <br> : | MDL NO. 3002 |

**GOVAERT PLAINTIFFS' RESPONSE IN OPPOSITION TO PLAINTIFF BEYER'S MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

Plaintiffs Tina Govaert and Don Moore (collectively, "Govaert Plaintiffs"), plaintiffs in *Govaert v. The Kroger Co.*, S.D. Ohio No. 1:21-cv-00174, submit this brief in opposition to the pending motion filed by Plaintiff Grace Beyer requesting transfer of all related actions to the Northern District of California for consolidation before Judge Edward J. Davila. [Doc. 1.]

Plaintiff Beyer's motion rests upon two false premises. First, Plaintiff Beyer incorrectly asserts that all the actions it seeks to centralize arise from the same, single data breach. But there were actually hundreds of different breaches of different organizations' systems, at different times, stealing different types of information, from different servers, through at least four different software vulnerabilities, across eight industries (healthcare; finance; public sector; energy; legal; manufacturing; education; and telecommunications) and six countries (United States; Australia; Canada; New Zealand; Singapore; and the United Kingdom).

Second, Plaintiff Beyer asserts that "[e]ach of the Actions name Accellion, Inc. [("Accellion")] as the sole or primary defendant." Mem. in Supp. Mot. for Transfer [Doc. 1-1] ("Br.") at 6. This too is untrue. Although all of the data breaches are believed to be the result of hackers reverse-engineering Accellion's outdated, 20-year-old File Transfer Appliance ("FTA") code, not all of the actions name Accellion as a defendant. Indeed, five of the 14 actions (36%)

1

listed on Plaintiff Beyer's Schedule of Actions [Doc. 1-2] – including Govaert Plaintiffs' action – do not include Accellion as party.[1]

The distinction between cases primarily asserting claims against Accellion ("Accellion Actions") and cases brought against Accellion's FTA clients ("Client Actions") is critically important, because liability in the Client Actions will turn on entirely different sets of evidence than liability in the Accellion Actions.  For instance, Govaert Plaintiffs allege, among other things, that Kroger knew that the FTA was vulnerable and was specifically told to move its data to a newer and more secure transfer platform before the breach, but that Kroger negligently failed to take any steps to protect the class members' personally identifiable information ("PII").  Thus, the claims and discovery to support those claims in *Govaert* will necessarily focus on the relationship between Kroger and the class members who had their PII stolen, whether Kroger owed a duty to protect the PII that arose from this relationship, whether Kroger knew or should have known that the PII was vulnerable, and whether Kroger negligently breached the duty by failing to adequately protect the PII.  In contrast, the claims and discovery in the Accellion Actions will focus on Accellion's role as the seller of a software application containing known security flaws, and whether it owed a duty to remote consumers who lost their PII as a result of numerous foreseeable data breaches.

In other words, while the facts of the Accellion Actions and Client Actions overlap to an extent, the most important facts – the facts upon which liability will necessarily turn – differ depending on whether the defendant is Accellion or a Client defendant.  These unique questions of fact will predominate in the Client Actions, making centralization inappropriate.

---

[1] Govaert Plaintiffs are aware of at least six cases currently pending against Kroger (without Accellion) and at least another two cases against Flagstar (without Accellion). *See Govaert v. The Kroger Co.*, S.D. Ohio 1:21-cv-00174 ("*Govaert*"); *Jones v. The Kroger Co.*, S.D. Ohio No. 1:21-00146 ("*Jones*"); *Doty v. The Kroger Co.*, S.D. Ohio 1:21-cv-00198 ("*Doty*"); *Strohm v. The Kroger Co.*, S.D. Ohio No. 1:21-cv-00226 ("*Strohm*"); *Abrams v. The Kroger Co.*, S.D. Ohio No. 1:21-cv-00240 ("*Abrams*"); *Buck v. The Kroger Co.*, S.D. Ohio No. 1:21-cv-00279 ("*Buck*"); *Angus v. Flagstar Bank, FSB*, E.D. Mich. No. 2:21-cv-10657 ("*Angus*"); *Garcia v. Flagstar Bank, FSB*, E.D. Mich. No. 2:21-cv-10671 ("*Garcia*").

Plaintiff Beyer cites various data breach cases in which this Panel has found centralization to be appropriate. *See* Mot. at 14-15 (collecting cases). But those cases without exception arose from the breach of a single entity's system. Plaintiff Beyer's proposed MDL implicates dozens of different breaches. And it is likely that as new breaches are reported, additional suits will be filed. Far from avoiding unnecessary costs or delay, consolidating all such cases in one MDL will only complicate the litigation and force the parties like the Govaert Plaintiffs asserting claims against only one Client defendant to expend additional time and financial resources litigating claims that have nothing to do with them.

The motion should be denied.

## BACKGROUND

Accellion's FTA is a 20-year-old file transfer application that resides on Accellion Clients' networks and is designed to securely move around files too large to be attached to email.[2] At some point prior to December 2020, hackers are believed to have reverse-engineered FTA code to identify four separate vulnerabilities in the application.[3] The hackers then searched for Accellion Clients using FTA through an online scan[4] and conducted a series of cyberattacks against them by exploiting the FTA vulnerabilities.[5] During the attacks, hackers were able to send commands to targeted devices, exfiltrate data, and clean up logs.[6] Thereafter, the hackers sent the Clients extortion emails threatening to publish the stolen data and information if the Clients do not pay the hacker's demands.[7]

---

[2] https://www.marketwatch.com/story/lower-profile-accellion-hack-hit-dozens-of-high-profile-targets-including-kroger-csx-harvard-01615154005 (last visited April 19, 2021).
[3] https://us-cert.cisa.gov/ncas/alerts/aa21-055a (last visited April 19, 2021).
[4] https://www.marketwatch.com/story/lower-profile-accellion-hack-hit-dozens-of-high-profile-targets-including-kroger-csx-harvard-01615154005 (last visited April 19, 2021).
[5] https://us-cert.cisa.gov/ncas/alerts/aa21-055a (last visited April 19, 2021).
[6] *Id*.
[7] https://www.msspalert.com/cybersecurity-breaches-and-attacks/hackers-exploit-accellion-fta-for-data-theft-extortion/ (last visited April 19, 2021).

The Reserve Bank of New Zealand was first to report a data breach on January 10, 2021.[8] The bank released a statement about the breach a day later, in which they stated that the breach may have exposed commercially and personally sensitive information. *Id*. Two days later, Accellion stated in a press release that fewer than 50 customers were affected by a vulnerability in its FTA software. *Id*. However, within a few weeks after Accellion's initial press release, numerous other companies and organizations disclosed data breaches caused by the exploitation of FTA vulnerabilities. On January 22, the Australian law firm Allens reported a similar breach, followed by the Australian Securities and Investment Commission on January 25. *Id*. On February 2, U.S. law firm Goodwin Procter was the first non-Australian or New Zealand victim to disclose a data breach. *Id*. Two days later, the Office of the U.S. Washington State Auditor disclosed a data breach, which was followed by data breaches at the University of Colorado (February 9), Singaporean telecommunications company Singtel (February 11), Australian medical research institute Q1MR Berghofer (February 11), U.S. law firm Jones Day (February 16), U.S. grocery store Kroger (February 19), Canadian airplane manufacturer Bombardier (February 23), Australian government agency Transport for NSW (February 23), security firm Qualys (March 3), and Flagstar Bank (March 6). *Id*.

Accellion's commentary on the scope of potential exploitation has changed since their original disclosure. *Id*. On January 12, the company stated that fewer than 50 customers were impacted; by February 22, the company had amended this to fewer than 100 out of 300 total FTA clients. *Id*. Based on the changes in statements from Accellion, it likely still is not fully aware of all of the breaches. *Id*. Furthermore, based on the number of industries and countries that include

---

[8] https://www.recordedfuture.com/dewmode-accellion-supply-chain-impact/#:~:text=The%20compromise%20of%20the%20Accellion,exfiltrate%20files%20from%20those%20servers. (last visited April 19, 2021).

clients of Accellion, it is likely that future reports of Accellion FTA exploitation will disclose additional companies, industries, and countries than have previously been reported. *Id*.

The question remains: "Why were firms continuing to use such over-the-hill technology?"[9]

## ARGUMENT

**A.    The Related Actions Are Not Suited for Transfer and Coordination Pursuant to 28 U.S. C. § 1407(a).**

A Section 1407 transfer for consolidated proceedings is only appropriate if (1) the actions share common issues of fact, (2) transfer would further convenience of parties and witnesses, and (3) transfer would advance the just and efficient conduct of the actions. 28 U.S.C. §1407(a). The party seeking transfer bears "a heavy burden to show that [the] common questions of fact are sufficiently complex, and that the accompanying discovery will be so time-consuming as to justify transfer under Section 1407." *In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig*., 448 F. Supp. 271, 273 (J.P.M.L. 1978). Plaintiff Beyer has not (and cannot) satisfy this burden.

1. <u>Transfer Should Be Denied Due to Lack of Sufficient Commonality or Shared Factual and Legal Issues Among Defendants.</u>

Plaintiff Beyer asserts that the Accellion Actions and Client Actions "share virtually identical facts and allegations concerning identical conduct by a common actor – Accellion." Mot. at 8. However, although all the breaches generally arise from vulnerabilities of the same FTA software, the Client Actions and Accellion Actions "share only a superficial commonality." *In re COVID-19 Business Interruption Protection Ins. Litig*., 482 F. Supp. 3d 1360, 1363 (J.P.M.L. 2020) (denying motion to create multi-defendant, industry-wide MDL). Plaintiff Beyer ignores that establishing liability for each Client defendant will involve facts and discovery specific and unique to that Client defendant. *See In re: OxyElite Pro & Jack3d Prod. Liab. Litig*., 11 F. Supp.

---

[9] https://www.bankinfosecurity.com/blogs/accellion-holdouts-get-legacy-file-transfer-appliance-blues-p-3009 (last visited April 19, 2021)

3d 1340, 1341 (J.P.M.L 2014) (rejecting motion to transfer where injuries caused by different drugs would require different fact discovery). For instance, like in the COVID-19 actions, Govaert Plaintiffs' action is brought on behalf of a class of customers against a specific Client defendant, Kroger. The facts supporting liability for Kroger will be entirely different than the facts supporting liability for Accellion, Flagstar Bank, or any other Client defendant.

Plaintiff Beyer purports to provide a list of "factual questions common to all Actions…." Mot. at 8. Tellingly, however, Plaintiff Beyer's list conspicuously fails to differentiate between Accellion and the Client defendants, repeatedly referring to both collectively as "Defendants." Mot. at 8 ("Whether Defendants owed duties to class members…; Whether Defendants failed to comply with those duties…."). But whether a given Client owed a duty to the class members to protect their PII will depend on the nature of the relationship between the Client (e.g., grocery store, pharmacy, law farm, state agency, university, bank) and the victims (e.g., shopper, patient, attorney client, student, accountholder). The type and sensitivity of the PII stolen (e.g., medical information, financial information, attorney-client privileged information) – and the corresponding level of confidentiality -- will also vary by Client.

Another key factual issue upon which liability in the Client Actions will turn is whether and when the Client knew or should have known of the FTA system's vulnerabilities, but nevertheless chose to continue using the outdated – or as Accellion calls it, "Legacy" – technology even though newer, more secure cloud-based options (including Accellion's own Kiteworks) were available. This issue too will vary from Client to Client and be a focus of discovery.

Even if actions "share common legal questions and, perhaps, a few factual questions," centralization is inappropriate where "unique questions of fact predominate over any common questions of fact." *In re Pharm. Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363

6

(J.P.M.L. 2002). Here, the Client Actions will turn on unique factual questions that will predominate over any common questions of fact shared with the Accellion Actions. And because the claims in each case will differ – factually and legally – based on the discovery from each plaintiff and Client defendant, there is no real risk of inconsistent rulings nor inconvenience to the judiciary. *See In re: Mortgage Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353 & n.2 (J.P.M.L. 2012) (denying industry-wide and bank-specific centralization because "individualized discovery and legal issues are likely to be numerous and substantial"). *See also In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020).

    2. <u>Transfer and Coordination Will Not Further the Convenience of the Parties and the Witnesses nor Will It Promote the Just and Efficient Conduct of the Related Actions.</u>

Centralization under 28 U.S.C. §1407 is only appropriate when it will "serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation." *In re Dairy Farmers of America, Inc., Cheese Antitrust Litig.*, 626 F. Supp. 2d 1348 (J.P.M.L. 2009). Centralization is supposed to "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION § 20.131 at 220 (Federal Judicial Center 4th ed. May 2020). But centralization of all Accellion Actions and Client Actions into a single litigation for pretrial proceedings will not further the convenience of the parties nor promote the just and efficient conduct of these actions.

Importantly, the proposed MDL raises significant managerial and efficiency concerns. A transferee court would have to establish a pretrial structure to manage hundreds of plaintiffs – many with disparate claims and views of the litigation – and perhaps dozens of Client defendants. The court would also have to organize a diverse set of parties and cases and oversee discovery that will likely differ by defendant and industry. To say this litigation would result in a complicated

7

MDL is an understatement. Managing such a litigation would be an ambitious undertaking for any jurist and implementing a pretrial structure that would yield efficiencies would be an insurmountable task. Plaintiff Beyer simply cannot establish that centralization will result in any convenience or efficiencies. *See In re: Hotel Booking Access for Individuals with Disabilities Litig.*, MDL No. 2978, 2021 WL 409560, at *1 (J.P.M.L. Feb. 5, 2021) (denying motion for centralization of actions alleging that various hotels did not comply with the Americans with Disabilities Act noting: "We are not convinced that centralization will add substantial efficiencies to this litigation. The circumstances of each hotel defendant's purported violations likely will vary to a great degree.").

    3.  <u>There Are Clear Alternatives to Centralization Under Section 1407</u>

Section 1407 transfer "should be the last solution that parties seek after considered review of all other options," "such as [informal coordination or] transfer under Section 1404." *In re: Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378-79 (J.P.M.L. 2011). Accordingly, this Panel routinely denies MDL treatment where there are clear alternatives to centralization. *See In re: Rite Aid Corp. Wage & Hour Emp't Practs. Litig.*, 655 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009). For instance, the Panel often denies requests for MDL treatment where informal coordination would suffice. *In re: Domestic Corp. Gas Absorption Refrig. Prods. Liab. Litig.*, 285 F. Supp. 3d 1358, 1360 (J.P.M.L. 2018) ("cooperation among the few involved courts and counsel appears to be a workable alternative to centralization in this litigation"); *In re Bernzomatic & Worthington Branded Handheld Torch Prods. Liab. Litig.*, 293 F. Supp. 3d 1380, 1381 (J.P.M.L. 2018) ("Informal coordination of discovery and pretrial motions, if it is even needed, is preferable to centralization in these circumstances."); *In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig.*, 273 F. Supp. 3d 1357, 1358 (J.P.M.L. 2017) ("Opponents of centralization

8

argue that unique factual and legal issues will predominate in this litigation, and that informal coordination is sufficient to minimize any overlap in pretrial proceedings. We are persuaded that any overlapping pretrial proceedings have been and can continue to be handled through informal coordination.").

Here, an unopposed motion to consolidate the five pending Client Actions against Kroger in the Southern District of Ohio has already been filed. *See* Pls.' Unopposed Motion to Consolidate, S.D. Ohio No. 1:21-cv-00146-TSB, Doc. 72. If granted, the *Govaert*, *Jones*, *Doty*, *Strohm*, *Abrams,* and *Buck* actions will be consolidated before Hon. Timothy S. Black. Even if the motion is denied, the parties have begun and will continue to informally coordinate the actions to minimize redundancies. Section 1407 transfer is unnecessary.

**B.     Alternatively, Defendant-Specific MDLs Are More Appropriate**

Plaintiff Beyer has failed to satisfy her burden of demonstrating that the Accellion Actions and Client Actions share sufficient commonality to justify centralization. Nor does Plaintiff Beyer explain how centralizing all of these disparate actions against all of the distinct defendants would reduce duplication in discovery or reduce the threat of inconsistent rulings. Indeed, the potential for overlapping discovery is minimal in these actions and duplication can be avoided through informal cooperation and shared discovery requests and responses, master interrogatories, or coordinated third party responses. *See In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying motion to transfer actions when "[a]lternatives to transfer exist that may minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings"). Thus, transfer and coordination of the Accellion Actions and Client Actions for pretrial proceedings to one Court is not appropriate.

However, should the Panel believe that consolidation is necessary, Govaert Plaintiffs respectfully submit that defendant-specific MDLs would be more appropriate than centralizing all Accellion Actions and Client Actions into a large, sprawling, unwieldy MDL. *See, e.g., In re COVID-19*, 482 F. Supp. 3d at 1363 (noting that defendant-specific MDLs would be more persuasive than an industry-wide MDL). As Plaintiff Beyer admits, when the Panel finds transfer to be appropriate in data breach cases, it normally "transfer[s] the cases to the district of the defendant's headquarters because the relevant documents, witnesses, and/or breached servers [a]re likely to be located there." Mot. at 14. Accordingly, Govaert Plaintiffs respectfully submit that to the extent the Panel finds any centralization appropriate, all actions in which Kroger is the primary defendant should be centralized in the Southern District of Ohio, all actions in which Flagstar Bank is the primary defendant should be centralized in the Eastern District of Michigan, and all actions in which Accellion is the primary defendant should be centralized in the Northern District of California.

## CONCLUSION

For the reasons set forth herein, Govaert Plaintiffs respectfully request that the Panel deny Plaintiff Beyer's motion to transfer pursuant to §1407 and award such other and further relief as the Panel deems just and proper.

Dated:  April 22, 2021　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　**GOLDENBERG SCHNEIDER, L.P.A**

　　　　　　　　　　　　　　　　　　　　　　*/s/ Jeffrey S. Goldenberg*
　　　　　　　　　　　　　　　　　　　　　　Jeffrey S. Goldenberg (0063771)
　　　　　　　　　　　　　　　　　　　　　　4445 Lake Forest Drive, Suite 490
　　　　　　　　　　　　　　　　　　　　　　Cincinnati, Ohio  45242
　　　　　　　　　　　　　　　　　　　　　　Tel: (513) 345-8297
　　　　　　　　　　　　　　　　　　　　　　Email: jgoldenberg@gs-legal.com

　　　　　　　　　　　　　　　　　　　　　　*Attorney for Plaintiffs Tina Govaert and Don Moore*